In the Matter of the Will of ELLEN C. McMANUS, Deceased. JANE F. WHITAKER, Individually and as Executrix of EDWARD WHITAKER, Deceased, Appellant; ANNIE M. VERRY, Respondent.

Argued February 28, 1940; decided April 16, 1940.

*Francis D. Higson* for appellant. The testamentary direction to pay the " accrued income " to the remainder-man is not an express stipulation against the apportionment of income. (*Equitable Trust Co.* v. *Miller,* 197 App. Div. 391; 233 N. Y. 650; *Matter of Juilliard,* 238 N. Y. 499; *Matter of Dreicer,* 155 Misc. Rep. 817; *Matter of Dexter,* 134 Misc. Rep. 195; *Matter of Watson,* 262 N. Y. 284;

*Matter of Lamb,* 182 App. Div. 180; 224 N. Y. 577.) The estate of the deceased life beneficiary is entitled to a share of the proceeds of the salvage operations in the defaulted mortgage investments which operations were commenced prior to the death of the life beneficiary and were uncompleted at the time of his death. (*Matter of Chapal,* 269 N. Y. 464; *Matter of Otis,* 276 N. Y. 101; *Meldon* v. *Devlin,* 31 App. Div. 146; 167 N. Y. 573; *Matter of Marshall,* 43 Misc. Rep. 238; *Matter of Scott,* 168 Misc. Rep. 531; Scott on Law of Trusts, § 241.6; *Matter of Alston,* [1901] 2 Ch. 584; *Lawrence* v. *Littlefield,* 215 N. Y. 561; *Furniss* v. *Cruikshank,* 230 N. Y. 495; *Matter of Jackson,* 258 N. Y. 281; *Matter of Pinkney,* 208 App. Div. 181; 238 N. Y. 602; *Matter of Densen,* 163 Misc. Rep. 232; *Matter of Schaeffer,* 178 App. Div. 117; 222 N. Y. 533; *Matter of Watson,* 144 Misc. Rep. 213; 262 N. Y. 284; *Matter of Myers,* 161 N. Y. Supp. 1111; *Matter of Rogers,* 22 App. Div. 428.)

*Theodore Berger* for respondent. The language of the will contains an express stipulation against apportionment of income. (Surr. Ct. Act, § 204; *Matter of Dreicer,* 155 Misc. Rep. 817; *Matter of Dexter,* 134 Misc. Rep. 195; *Matter of Juilliard,* 238 N. Y. 499; *Matter of Watson,* 262 N. Y. 284.) All the income, including the income arising from the salvage operations, is " accrued income " which, by reason of the language in the will, belongs solely to the remainderman. (*Hascall* v. *King,* 162 N. Y. 134; *Schoellkopf Aniline & Chemical Works* v. *United States,* 3 Fed. Supp. 417; *Matter of Chapal,* 269 N. Y. 464; *Matter of Otis,* 276 N. Y. 101; *Meldon* v. *Devlin,* 31 App. Div. 146; *Matter of Scott,* 168 Misc. Rep. 531; *Matter of Jackson,* 258 N. Y. 281.)

LEWIS, J. We are to determine whether an express stipulation against apportionment, under section 204 of the Surrogate's Court Act, is present in the following clause of the will of Ellen C. McManus, deceased:

" The remaining one of said equal one-twelfth parts, I give, devise and bequeath to my executors hereinafter named

or their successors in trust nevertheless, to receive, hold, manage, invest, re-invest and keep invested, to collect and receive the income therefrom and after deducting the necessary and proper charges and expenses of this trust to pay the net income thereof to my grand nephew Edward Whitaker *during his life and upon his death to divide the principal of said trust together with any accrued income thereof* equally among and to pay the same to my nieces and nephews who may be living at the time of the expiration of said trust * * *."

The life beneficiary, Edward Whitaker, died June 22, 1938, leaving a widow, Jane F. Whitaker, the appellant herein, who appears in this proceeding individually and as executrix of her deceased husband's estate. The respondent, Annie M. Verry, a niece of the testatrix, is the sole remainderman.

Upon the trustee's petition for an accounting and for a construction of the will the Surrogate ruled that the clause quoted above did not contain an express stipulation against apportionment and that all income accruing upon the principal of the trust up to the date of death of the life beneficiary was payable upon his death to his personal representatives. The order of the Appellate Division, which is now before us for review, reversed on the law the Surrogate's decree and remitted the proceeding to Surrogate's Court with directions that a decree be entered adjudging that the clause in controversy constitutes in effect an express stipulation that accrued income should not be apportioned, and that the testamentary trustee account accordingly.

In administering the trust, with special reference to the disposition of income between the estate of the deceased life beneficiary and the remainderman, the trustee was governed by section 204 of the Surrogate's Court Act which, so far as material here, provides as follows:

" § 204. * * * All rents * * * and other payments of every description made payable or becoming due at fixed periods * * * shall be apportioned so that on the death of any person interested in * * * such pay-

ments * * * shall be entitled to a proportion of such * * * payments, according to the time which shall have lapsed from the commencement or last period of payment thereof, as the case may be, including the day of the death of such person, or of the determination of his or her interest, after making allowance and deductions on account of charges on such * * * payments * * *. *This section shall not apply to any case in which it shall be expressly stipulated that no apportionment be made.* * * *."

The language employed by the testatrix serves clearly to fix the date when payment of income to the life beneficiary shall cease and payment thereof to the remainderman shall begin. It was only " during his life " that the life beneficiary was to receive the net income from the trust fund created in his favor. " Upon his death " the principal of that fund " *together with any accrued income thereof* " was directed to be paid to certain named remaindermen of whom concededly the present respondent is the only one entitled thereto. The language thus chosen is clear and unequivocal and leaves us in no doubt as to the decedent's testamentary intent. It constitutes an express stipulation against apportionment within the statutory exception to be found in section 204 of the Surrogate's Court Act. (*Matter of Juilliard*, 238 N. Y. 499, 506, 508, 510. See, also, *Matter of Dreicer*, 155 Misc. Rep. 817, 818; *Matter of Dexter*, 134 Misc. Rep. 195, 196.)

It is not disputed that prior to his death there had been paid to the life beneficiary all net income actually received by the trustee. Among the investments made by the trustee are bonds and mortgages which were not in default on the date of the life beneficiary's death and upon which interest was accruing but had not been received by the trustee. Such interest within the terms of the will is " accrued income " from the trust fund which, in view of the presence in the will of an express stipulation against apportionment, is to be paid by the trustee to the remainderman.

The trustee had also invested a portion of the trust funds in four mortgages upon each of which a subsequent

default had occurred. Thereafter title to each property which constituted security for the mortgage debt was acquired by the trustee either at foreclosure sale or by purchase of a deed thereof in lieu of foreclosure. In two of such instances the property thus acquired was sold by the trustee after the death of the life beneficiary. The remaining two properties had not been sold on the date of the filing by the trustee of its account on March 20, 1939.

In each of these four instances where the mortgaged property was acquired by the trustee, the property had served as security not alone for trust principal thus invested but also for any unpaid interest upon the mortgage investment. Accordingly, viewing the process of salvaging the four mortgage investments in the light of the requirements of proper administration and fiduciary accountancy the trustee should be guided by the rule which was clearly stated by Judge LOUGHRAN in *Matter of Chapal* (269 N. Y. 464, 472–473). "On a sale, * * * the proceeds should be used first to pay the expenses of the sale and the foreclosure costs and next to reimburse the capital account for any advances of capital for carrying charges not theretofore reimbursed out of income from the property. Then the balance is to be apportioned between principal and income in the proportion fixed by the respective amounts thereof represented by the net sale proceeds. In the capital account will be the original mortgage investment. In the income account will be unpaid interest accrued to the date of sale upon the original capital."

We thus reach the problem of determining the rights of the estate of the life beneficiary and the remainderman respectively in the amount credited to the income account resulting from the trustee's effort to save the mortgage investments. We have seen that by reason of defaults in four mortgages and the course taken by the trustee to salvage those investments there came into its hands prior to the death of the life beneficiary title to properties which in each instance had afforded security not alone for the principal indebtedness but for interest upon the mortgage

debt. Had such defaults not occurred " during his life " the mortgage interest would have been payable to the life beneficiary as a part of income due to him under the terms of the testamentary trust. In these circumstances the trustee should pay to the estate of the life beneficiary from funds received upon the sale of the four properties such portion thereof as equals the amount of mortgage interest which would have been paid to the life beneficiary — in the proportion represented in the salvaged investments — up to the dates of transfer to the trustee, had no defaults in the mortgage investments occurred. The reason the life beneficiary is entitled to the portion mentioned above is that the transfer of the property to the trustee works a payment of income represented therein. We treat such income as neither accrued nor accruing — it has been paid. All that remains is the administrative act by which the trustee makes distribution thereof.

In thus charting the course for adjusting between the estate of the life beneficiary and the remainderman the payment of income, we have treated as personalty the four properties bought in by the trustee either on foreclosure of investment mortgages or in lieu of foreclosure. The trustee is thus made accountable for the proceeds of the sale of each property so acquired and for the disposition of such proceeds according to the direction of the testatrix. (*Lockman* v. *Reilly*, 95 N. Y. 64, 71.) We have thus followed the suggestion to be found in the opinion by Judge RAPALLO writing in the case last cited (p. 71) that " * * * land thus purchased by an executor or administrator is regarded as a substitute for the mortgage foreclosed and takes its place for all purposes as between the executor or administrator and the parties interested in the estate. It is not treated as land belonging to the testator." Again, in *Haberman* v. *Baker* (128 N. Y. 253 at p. 261) this court said, " though it is true that he held the property in trust, nevertheless the premises so acquired [by foreclosure] took on the character of the mortgage indebtedness, and *were as personalty in the administrator's hands,* which he could

dispose of and was liable to account for as such." (See, also, *Matter of Miller*, 257 N. Y. 349, 355; *Matter of Scott*, 168 Misc. Rep. 531, 533.) The same subject was reviewed in 2 Scott on Trusts ([1939], § 241.6 at p. 1382) with the following comment — " * * * where a trust is created under which the income is payable to one beneficiary for life and the principal is to be distributed to others on his death, and the trust estate includes unproductive property which is not sold until after the death of the life beneficiary, the estate of the life beneficiary is entitled to a portion of the proceeds of sale as delayed income. Until the property is sold the trustee has not completed the performance of his duties and is not justified in making distribution of the estate. It would be unfair to the estate of the life beneficiary who had been deprived of income with respect to the unproductive property to deprive him or his estate permanently of such income because of the accidental circumstance that the trustee failed to sell the property prior to the death of the beneficiary."

The order of the Appellate Division should be modified by providing that the proceeding be remitted to Surrogate's Court with directions to enter a decree adjudging that the trustee proceed with the administration of the testamentary trust involved herein in accord with this opinion and thereafter to account, and as thus modified affirmed, with costs to each party filing a brief, payable out of the estate.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, SEARS and CONWAY, JJ., concur.

Ordered accordingly.